UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Steven Wilkes,

Plaintiff,

v.

Cargill, Incorporated and Associated Companies Pension Plan for Production Employees, Cargill, Incorporated and Associated Companies Trust Agreement for Production Employees, and Cargill, Incorporated,

Defendants.

File No. 25-cv-3227 (ECT/SGE)

**OPINION AND ORDER**

---

Andrea B. Niesen, Klampe Law Firm, LLC, Rochester, MN, for Plaintiff Steven Wilkes.

Raymond A. Kresge, Cozen O'Connor, Philadelphia, PA; and Austin J. Malinowski, Cozen O'Connor, Minneapolis, MN, for Defendants Cargill, Incorporated and Associated Companies Pension Plan for Production Employees, Cargill, Incorporated and Associated Companies Trust Agreement for Production Employees, and Cargill, Incorporated.

---

In this ERISA lawsuit, Plaintiff Steven Wilkes seeks to recover pension benefits from Defendant Cargill, Incorporated and Associated Companies Pension Plan for Production Employees (the "Plan"). In 2023, the Plan denied Wilkes's administrative claim and subsequent appeal for pension benefits stemming from his employment with Cargill from 1977-1986. Wilkes then filed this case seeking the benefits and other relief authorized by ERISA.

Wilkes and Defendants have filed cross-motions for summary judgment. The Parties do not dispute that Wilkes was entitled to a vested pension benefit. Instead, they

dispute whether the Plan actually paid the benefit Wilkes was owed. In deciding Wilkes's administrative claim and appeal, the Plan determined it paid Wilkes his benefit as a lump sum sometime after a 1989 amendment to the Plan required cash-outs for small benefit amounts. Wilkes maintains he never received such payment. He argues that the Plan abused its discretion when it denied his claim by not requesting or maintaining the Plan's tax or bank records to verify payment to Wilkes.

ERISA does not require this. The denial of Wilkes's claim was supported by substantial evidence and was therefore not an abuse of discretion. Defendants' summary-judgment motion will be granted, and Wilkes's motion will be denied.

## I[1]

Wilkes worked for Cargill at its Columbus, Mississippi plant from 1977 until the plant closed in December 1986. AR 069, 072. On November 11, 1986, Cargill's Columbus Plant Manager informed Wilkes by memo that he was vested in Cargill's pension plan. AR 071. Therefore, the Parties do not dispute that Wilkes was a vested employee owed a pension benefit under the Plan. They do, however, dispute whether the Plan ever paid Wilkes his benefit.

Wilkes maintains that he has never received any money from the Plan. In 2017, after over 30 years had passed since his employment ended, Wilkes began inquiring with

[1] Unless otherwise indicated, the facts are taken from the stipulated administrative record filed by the Parties. *See* Niesen Aff., Ex. A [ECF No. 31]; Kresge Decl., Ex. A [ECF No. 26-1]. Citations to documents in the administrative record appear with the prefix "AR" followed by the page number affixed by the Parties (appearing usually in the bottom right corner of each page and preceded with "Wilkes").

the Plan regarding his pension benefits. AR 072; Pl.'s Mem. in Supp. at 2 [ECF No. 30]. In 2021, Wilkes contacted Cargill's Benefits Service Center several times, maintaining that he had never been paid. AR 075–76. He submitted no documents, except the November 11, 1986 memo from the Columbus Plant Manager, to substantiate his claim. *See id.* Service Center staff determined that Wilkes's benefit was already paid in full based on available records. AR 075. On May 2, 2023, Wilkes submitted a written claim for benefits to the Plan's Claims Administrator, again alleging that he had not received any payment. AR 069. He attached no supporting documentation.

On July 27, 2023, the Plan denied Wilkes's claim in a written letter. AR 093–97. As the letter explained, based on the November 11, 1986 memo from the Columbus Plant Manager, the Plan began with a review of records from 1986-1989 that might be related to Wilkes's claim. AR 093. Those records included "[t]he relevant Plans in effect in 1986-1989" and "[a]vailable payment records." *Id.* In 1986, a mandatory cash-out provision for small benefits amounts was added to the Plan as Section 12.5. AR 001–02. That provision read as follows:

> If the monthly benefit payable to a Participant or beneficiary is less than $25.00 and the present value of such benefit does not exceed $3,500.00, such present value shall be payable in one lump sum to the Participant or his beneficiary as soon as administratively feasible in lieu of such monthly benefit.

AR 002. In 1989, Section 12.5 was amended to remove the $25 monthly benefit threshold as a condition of mandatory cash-out. AR 005. Starting at that time, participants whose benefit had a present value of $3,500 or less were subject to mandatory cash-out of their benefit as a lump sum. AR 005, 094–95.

The Plan asked the Cargill Pension Department to provide estimated valuations of Wilkes's monthly benefit and present-value lump sum in 1986, as well as estimated valuations of Wilkes's present-value lump sum in 1988 and 1989. AR 095. The Pension Department determined that Wilkes was entitled to a $135 monthly benefit in 1986. AR 091, 095. Wilkes therefore would have been vested but not subject to mandatory cash-out at that time. AR 095. The Pension Department determined that Wilkes's present-value lump sum was $1,821.58 and $2,099.21 in 1988 and 1989, respectively. AR 091, 095. The Plan therefore concluded that a mandatory lump-sum cash-out of Wilkes's benefit was triggered sometime in either 1988 or 1989 because both values were under the $3,500 threshold at the time of the 1989 amendment to Section 12.5. AR 095–96.

As part of its investigation, the Plan also requested historic payment records. Prior to 2011, Cargill administered payment of Plan benefits and maintained its own participant records. AR 096. In 2011, Cargill transferred payment administration to Willis Towers Watson, along with "all information/data relating to all participants who were then being paid Plan benefits or who were owed Plan benefits in the future." *Id.* Cargill did not transfer any participant data for individuals already paid their benefits in full. *Id.* The Plan obtained a screenshot of a spreadsheet containing pre-2011 participant records. AR 092, 096. Wilkes's record shows a "total current benefit in payment" of $0 and a "total current benefit deferred" of $0. AR 092. In its denial letter, the Plan explained that "[i]f a Plan participant had received his/her full Plan benefit, he/she would appear in the [] spreadsheet as having $0 under the columns for 'total current benefit' and 'total current benefit deferred.'" AR 096. It therefore concluded that the record showed Wilkes had already

received his full Plan benefit. *Id.* The Plan also asked Willis Towers Watson if it had any record of Wilkes. *Id.* It did not, "thereby further confirming that Mr. Wilkes was paid his Plan benefit." *Id.*

Wilkes appealed. AR 108–09. In his appeal letter, Wilkes appeared to question the Plan's screenshot of participant records. He stated that he had "no idea which software was used by Cargill at what time, who created or maintained any such spreadsheet, whether the screenshot was accurate, or other information regarding the spreadsheet." AR 108. He "categorically denie[d] ever having been paid according to the Plan for retirement benefits." AR 109. He maintained that had he been paid his benefit "both he and Cargill would have documentation relating to that transaction, which obviously does not exist." *Id.* He again attached no documentation to support his appeal, despite the instruction in the Plan's denial letter that "any appeal should provide additional information to substantiate [the] claim that a Plan benefit is still owed." AR 096.

The Plan upheld its denial. AR 110–13. The Plan was unpersuaded that Wilkes's appeal should be granted "based on his denial of being paid his Plan benefit" alone. AR 112. It reiterated its support for its decision, including Wilkes's participant record, the 1989 amendment to the Plan, the valuations of Wilkes's benefit, and its inquiry to Willis Towers Watson. *Id.* Meanwhile, Wilkes "did not include as part of his appeal any historical bank records or any continuing Plan account balance statements" that could substantiate his claim. *Id.* The Plan also challenged Wilkes's assertion that no documentation reflecting payment to Wilkes exists, citing Wilkes's participant record showing a total benefit value of $0. AR 111. It pointed out that Wilkes did not challenge

the accuracy of its pre-2011 participant records other than stating that he "has no idea . . . whether the screenshot was accurate." AR 112.

Wilkes commenced this action on August 12, 2025, asserting a claim under the civil enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). *See* Compl. ¶ 19 [ECF No. 1]; Pl.'s Mem. in Supp. at 8. He seeks to recover "all benefits due," "fees, costs and disbursements," "prejudgment and post-judgment interest," and "such other further relief, equitable or otherwise, as the Court may deem proper." Compl. ¶ 19. Wilkes also asks for "an interim order remanding the claim to the plan administrator" to locate "document(s) evidencing that Mr. Wilkes both received and cashed a check for a lump sum payment under the pension plan."[2] Pl.'s Mem. in Supp. at 16.

---

[2] It is unclear whether Wilkes requests remand in lieu of an award of benefits or in the alternative in the event his motion is denied. *See* Pl.'s Mem. in Supp. at 15, 16 (asking first for an award of "pension benefits and pre-judgment interest" and then for remand to the plan administrator). Wilkes styles his principal argument for why the Plan's denial was improper in terms of a breach of the Plan's fiduciary duty to perform a full and fair review of his claim. *See* Pl.'s Mem. in Supp. at 11; Pl.'s Reply Mem. at 5–7; Pl.'s Mem. in Opp'n at 3–4. 29 U.S.C. § 1132(a)(3)(B) provides individual equitable relief for a breach of a plan administrator's fiduciary duties. 29 U.S.C. § 1133(2) sets forth the requirement that a plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Remand can be an appropriate remedy when a plan violates § 1133(2) by failing to afford a claimant a full and fair review. *See Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009) (concluding the appropriate remedy for claims administrator's violation of § 1133(2) "is not an award of benefits from this court" but remand to the administrator). Here, however, it is unnecessary to decide whether the Plan breached a fiduciary duty, whether it failed to afford Wilkes a full and fair review, or whether remand is an appropriate remedy. First, Wilkes's Complaint raises only a claim for "an award of benefits due" under § 1132(a)(1)(B). Compl. ¶ 19; *see also* Pl.'s Mem. in Supp. at 8 ("This appeal is of the denial of vested pension benefits to Mr. Wilkes."). Second, Wilkes cites no authority to support his contention that the Plan failed to afford

II

A

Suits brought under § 1132(a)(1)(B) to recover benefits allegedly due to a participant are to be reviewed de novo unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants the administrator such discretion, then "review of the administrator's decision is for an abuse of discretion." *Johnston v. Prudential Ins. Co. of Am.*, 916 F.3d 712, 714 (8th Cir. 2019) (quoting *McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 759 (8th Cir. 2012)). Here, there is no dispute the Plan grants the Plan Administrator "discretionary authority to interpret and construe the terms of the Plan and to determine all questions of eligibility and status of Employees, Participants and Beneficiaries under the Plan and the amounts of their respective interests." AR 013; *see also* Pl.'s Mem. in Supp. at 9 ("The pension plan in this case granted the plan administrator exclusive discretionary authority to determine eligibility."); Def.'s Mem. in

---

him a full and fair review. Moreover, as discussed later in this opinion, Wilkes essentially conceded through his counsel at oral argument that there was no procedural irregularity in the Plan's decision-making process, i.e., there is no basis for the assertion that the Plan failed to afford Wilkes a full and fair review. Finally, remand would be inappropriate where, as here, there is substantial evidence in the administrative record supporting denial of Wilkes's pension benefit.

Supp. at 24 [ECF No. 27] ("Thus, the clear Plan language on discretionary authority triggers . . . a deferential review of the denial of Wilkes' benefit claim.").[3]

Under the abuse-of-discretion standard, district courts in the Eighth Circuit reverse a plan administrator's decision "only if it was arbitrary and capricious, meaning it was unreasonable or unsupported by substantial evidence." *McIntyre v. Reliance Standard Life Ins. Co.*, 73 F.4th 993, 1000 (8th Cir. 2023). "Substantial evidence is more than a scintilla but less than a preponderance." *Johnston*, 916 F.3d at 714 (citation modified). "Under the abuse of discretion standard of review, we do not substitute our own weighing of the evidence for that of the administrator." *Gerhardt v. Liberty Life Assur. Co. of Bos.*, 736 F.3d 777, 780 (8th Cir. 2013) (citation modified). "A decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016) (citation modified). "Only when the evidence relied on is overwhelmed by contrary evidence may the court find an abuse of discretion." *Whitley v. Standard Ins.*, 815 F.3d 1134, 1142 (8th Cir. 2016) (citation modified). "In ERISA cases, the general rule is that review is limited to evidence that was before the administrator." *Jones v. ReliaStar Life Ins. Co.*, 615 F.3d 941, 945 (8th Cir. 2010). Therefore, "a reviewing court must focus on the evidence

---

[3] Wilkes argued initially that the Plan's determination should be subject to a less deferential standard of review due to alleged procedural irregularities in the Plan's decision-making process. *See* Pl.'s Mem. in Supp. at 9–12. At the hearing on the Parties' motions, however, Wilkes's counsel conceded that abuse of discretion is the appropriate standard of review.

available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829–30 (8th Cir. 2014) (citation modified).

B

The crux of Wilkes's argument is that the Plan abused its discretion by failing "to obtain, or maintain, the information necessary to provide Mr. Wilkes with a full and fair review of his claim for benefits," namely, tax or bank records that could definitively show the lump-sum benefit payment to Wilkes. Pl.'s Mem. in Supp. at 11; *see also* Pl.'s Reply Mem. at 5–7 [ECF No. 39]; Pl.'s Mem. in Opp'n at 4 [ECF No. 37]. Defendants argue that the Plan acted reasonably based on substantial evidence in the administrative record. Def.'s Mem. in Supp. at 31–32. I agree with Defendants and find that the Plan's denial of Wilkes's benefit was not an abuse of discretion.

The administrative record indicates that Wilkes's employment with Cargill ended in 1986, AR 072, and contains a November 11, 1986 memo from Cargill listing Wilkes as a vested employee, AR 071. Based on that information, the Plan reviewed the Plans and amendments in effect from 1986-1989. *See* AR 093. The Plan determined that a 1989 amendment to the Plan's mandatory cash-out provision removed a $25 monthly benefit threshold as a requirement for a mandatory cash-out, leaving a $3,500 present-value threshold as the only trigger for a cash-out. AR 002, 005, 094–95. Because it then needed to determine whether payout of Wilkes's benefit was implicated by the 1989 amendment, the Plan asked the Cargill Pension Department to provide estimated valuations of Wilkes's monthly benefit and present-value lump sum in 1986, as well as estimated valuations of

Wilkes's present-value lump sum in 1988 and 1989. AR 095. The Pension Department determined that Wilkes was entitled to a $135 monthly benefit in 1986, AR 091, 095, an amount exceeding the monthly benefit threshold of $25 that was required for a mandatory cash-out prior to the 1989 amendment, AR 095, 099. The Plan reasoned that this is why the November 11, 1986 memo lists Wilkes as a vested employee as opposed to the Plan paying him out at that time. AR 095. In 1988 and 1989, Wilkes's present-value lump sum was $1,821.58 and $2,099.21, respectively. AR 091, 095. Both values being under the $3,500 threshold that remained after the 1989 amendment, the Plan concluded that a mandatory lump-sum cash-out of Wilkes's benefit was triggered sometime in either 1988 or 1989. AR 095–96, 112. The Plan validated its conclusion by obtaining a screenshot from its historic participant records. AR 092. In contrast to participants owed current or deferred benefits, Wilkes's record shows a total benefit value of $0, meaning that Wilkes was already paid his full Plan benefit. AR 092, 096, 111. Knowing that it had transferred payment administration responsibilities to Willis Towers Watson in 2011, along with all data for participants owed Plan benefits in 2011 or in the future, the Plan also followed up with Willis Towers Watson. AR 096. Willis Towers Watson had no record of Wilkes, further confirming he had already been paid in full before 2011. *Id.*

Given Wilkes's vesting status in 1986, the Plan's 1989 amendment, the estimated valuations of Wilkes's benefit in 1986, 1988, and 1989, Wilkes's participant record, and confirmation from Willis Towers Watson, the Plan's denial of pension benefits to Wilkes was supported by substantial evidence in the administrative record. The Plan not only came to a reasoned conclusion that Wilkes was paid his Plan benefit based on the terms of

the Plan, but it also confirmed its conclusion by obtaining Wilkes's participant record and verifying with Willis Towers Watson whether it could rely on that record. The Plan did not abuse its discretion.

Wilkes argues that the Plan rested its decision on assumptions because it did not request or maintain additional records, such as tax or bank records, that could validate Wilkes's participant record showing $0. *See* Pl.'s Mem. in Supp. at 13–14; Pl.'s Reply Mem. at 5–6; Pl.'s Mem. in Opp'n at 4. Wilkes would require the Plan to point to evidence in the record "showing the date of the payment, amount of the payment, who it was paid to, and whether the payment had been cashed." Pl.'s Mem. in Opp'n at 4; *see also* Pl.'s Mem. in Supp. at 15 ("The question before the Court is . . . Is there sufficient evidence in the administrative record that Mr. Wilkes *received and cashed* pension benefits?"). But Wilkes cites no authority to support his argument that failure to obtain or maintain additional or more detailed records constitutes an abuse of discretion. And Wilkes's argument ignores the evidence that *was* in the administrative record to corroborate his participant record—namely, the 1986 memo listing Wilkes as vested, the 1989 Plan amendment, and the valuations of his benefit in 1986, 1988, and 1989. Taken together, the administrative record contains information from which a reasonable person could conclude that Wilkes had already been paid, even if it lacks the specific information Wilkes argues is necessary to further verify payment.

The fact that Wilkes provided no evidence in support of his claim also undermines his argument that the Plan abused its discretion by failing to develop the administrative record. The Plan's denial letter informed Wilkes that he needed to substantiate his claim

that he was still owed a benefit. AR 096. Wilkes argues that he was not obligated to substantiate his claim with more than his word because "Defendants had a better ability to acquire evidence necessary for a full and fair review of the claim." Pl.'s Mem. in Opp'n at 6. Wilkes cites *Barton* for support, but that case does not support his position. *See* Pl.'s Mem. in Supp. at 12 (citing *Est. of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060 (9th Cir. 2016)). In *Barton*, the Ninth Circuit held that where a plaintiff has put forward "documentary or other objective evidence . . . that he is entitled to a pension but has no means except for information in the defendant's control" to substantiate his claim, "the burden then shifts to the defendant to produce such information." *Barton*, 820 F.3d at 1069. Given that nearly 40 years have passed since Wilkes's employment ended, it is easy to appreciate why the evidence available to both Parties in this case might be limited. Even so, individual tax records, bank records, or Plan account statements—all theoretically within Wilkes's control—could have substantiated Wilkes's claim that he was never paid. Not only did Wilkes fail to put forward any such evidence, but he also cannot reasonably argue that Defendants control the only evidence that could substantiate his claim.

In addition to taking issue with the Plan's investigation, Wilkes argues that the Plan's evidence is not substantial because he simply does not know whether the screenshot of his participant record means what the Plan says it means. *See* AR 108; Pl.'s Mem. in Supp. at 13–14. But Wilkes's lack of knowledge does not make it unreasonable for the Plan to rely on its knowledge of how to interpret its own records, and the Plan provided a rational explanation for its interpretation in its claim denial and appeal letter to Wilkes. *See* AR 096, 111–12. Wilkes also tries to cast doubt on the Plan's interpretation of his

participant record by arguing that, because he was required to prove his vesting status in 2021, "the plan did not have Plaintiff's eligibility/vesting status prior to 2021." Pl.'s Reply Mem. at 5. The November 11, 1986 memo from Cargill shows that the Plan did in fact have record of Wilkes's vesting status at the time his employment ended in 1986. *See* AR 071. It was therefore reasonable for the Plan to infer that Cargill also knew Wilkes's vesting status in 1989 when the mandatory cash-out would have been triggered. Absent something more from Wilkes, there is no reason to doubt the Plan's explanation, which is supported by substantial evidence in the administrative record. *See, e.g.*, *Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 630 (8th Cir. 2007) ("In an ERISA benefits-denial case, a district court may consider evidence not in the administrative record if the plaintiff shows good cause for its omission." (citation modified)).

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment [ECF No. 29] is **DENIED**.
2. Defendants' Motion for Summary Judgment [ECF No. 24] is **GRANTED**.
3. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 11, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court